**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 05-2311

THOMAS M. NIELSON, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 13, 2009                                    Decided May 21, 2009)

*Kirsten V.K. Robbins*, with whom *Frederick C. Schafrick* and *Brooke E. McDonough*, all of Washington, D.C., were on the brief for the appellant.

*Pamela M. Nash,* with whom *Paul J. Hutter,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and MOORMAN, and DAVIS, *Judges*.

DAVIS, *Judge*: U.S. Air Force veteran Thomas M. Nielson appeals through counsel that portion of a June 23, 2005, Board of Veterans' Appeals (Board) decision that denied him entitlement to VA outpatient dental treatment and related dental appliances. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the Board's June 2005 decision.

## I. BACKGROUND

Mr. Nielson served in the U.S. Air Force from September 25, 1950, to September 24, 1954, and from March 24, 1955, to October 11, 1957. During his service in the Korean Conflict between June 6, 1952, and October 27, 1952, all but three of Mr. Nielson's teeth were extracted, most without

anesthesia.[1]  His remaining three teeth were removed while he was still in the military, but after he returned to the United States.  The military provided him a set of dentures in May 1953.  On discharge from the Air Force, his separation examination report listed all of his teeth as missing.

Mr. Nielson sought service connection for the loss of his teeth in April 1991.  He also requested VA "dental care (new dentures) in accordance with the provisions of" 38 U.S.C. § 612(6)(b)(1)(C) (now 38 U.S.C. § 1712) (furnishing outpatient dental services for service-connected dental conditions due to combat injuries or "other service trauma").  Record (R.) at 173.  In a Feburary 1992 decision, VA afforded Mr. Nielson the presumption of soundness on entry into service and granted service connection for the extraction of all his teeth, except for his wisdom teeth, and assigned a noncompensable disability rating.  As part of that decision, VA found that Mr. Nielson's teeth extractions were not due to "service trauma" or "combat dental injuries."  R. at 225.  That same month, the Salt Lake City, Utah, VA medical center reviewed Mr. Nielson's application for outpatient dental treatment and determined that because he did "not have a service-connected dental condition or disability determined to be the result of combat wounds or other injuries" he was not eligible for outpatient dental treatment under section 1712(a)(1)(C).  R. at 233.  In June 1993, the Board affirmed that decision, and Mr. Nielson appealed to the Court.  The Court remanded the matter and ordered the Board to "consult with the [VA] General Counsel as to the proper interpretation of 38 C.F.R. §§ 3.381(e) [(1993)] and 17.123(c) [now § 17.161(c) (2008) (authorizing outpatient dental treatment for certain dental conditions resulting from combat wounds or "service trauma")], particularly the definition of 'service trauma' and its application to the case at hand."  R. at 342.

On remand, the VA General Counsel opined that "merely to have had dental extractions during service is not tantamount to dental trauma," and held that "[f]or the purposes of determining whether a veteran has Class II[(a)] eligibility for dental care under 17 [sic] C.F.R. § 17.123(c), the term 'service trauma' does not include the intended effects of treatment provided during the veteran's military service."  VA Gen. Coun. Prec. 5-97 (Jan. 22, 1997) [hereinafter G.C. Prec. 5-97].  Relying on that opinion, the Board concluded that "the removal of the veteran's teeth in service by military

---

[1]Although Mr. Nielson's service medical records are presumed destroyed in the National Personnel Records Center fire, both parties suggest that Mr. Nielson suffered from periodontal disease.

dentists due to periodontal infection(s) does not constitute 'service trauma' and does not establish his eligibility to receive Class II(a) outpatient dental treatment." R. at 35. Mr. Nielson appealed that decision.

## II. CONTENTIONS ON APPEAL

Mr. Nielson argues that the circumstances surrounding the extraction of his teeth qualify as "service trauma." He asserts that the Board's statement of reasons or bases for its decision, which relies on the General Counsel's opinion, is inadequate because that opinion fails to address the specifics of his case as ordered by the Court and is otherwise unpersuasive. He also contends that the Board was clearly erroneous in finding that the substandard dental care he received in service does not constitute "service trauma."

The Secretary argues for affirmance of the Board's decision, asserting that because the Board is bound by G.C. Prec. 5-97, "the Court cannot conclude that the Board's findings, consistent with this opinion, were clearly erroneous." Secretary's Brief at 5. He also asserts that because G.C. Prec. 5-97 interprets a regulation and not a statute, it is entitled to substantial deference.

In response, Mr. Nielson argues that the Court owes no deference to the General Counsel opinion because VA's regulation merely parrots the statutory language and thus is not an interpretation of a regulatory term. He also reiterates his arguments that the General Counsel opinion is unpersuasive and that the substandard dental care he received in service constitutes "service trauma" under section 1712(a)(1)(C).

## III. ANALYSIS

### A. Statutory Interpretation

This case involves the proper interpretation of the meaning of the phrase "service trauma" as used in 38 U.S.C. § 1712(a)(1)(C) and 38 C.F.R. § 17.161(c). "Outpatient dental services and treatment, and related dental appliances, shall be furnished under this section only for a dental condition or disability . . . which is a service-connected dental condition or disability due to combat wounds or other service trauma." 38 U.S.C. § 1712(a)(1)(C); *see* 38 C.F.R. § 17.161(c) (authorizing certain outpatient dental treatment for veterans with "service-connected noncompensable dental

3

condition or disability adjudicated as resulting from combat wounds or service trauma"). No doubt, Mr. Nielson has a dental disability. To determine whether that disability is a condition caused by service trauma, we must first determine the meaning of "service trauma" as used in section 1712(a)(1)(C). A statute's plain meaning is "derived from its text and its structure." *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. MSPB*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)); *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). If "the plain meaning of a statute is discernable, that 'plain meaning must be given effect,'" *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995)), unless a "'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters,'" *Gardner v. Derwinski*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)); *see also Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006). "[W]hen a reviewing court 'find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" *Smith v. Derwinski*, 2 Vet.App. 429, 431 (1992) (quoting *Demarest v. Manspeaker*, 498 U.S. 184 (1991)). However, if a statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. at 118; *Padgett v. Nicholson*, 473 F.3d 1364, 1368 (Fed. Cir. 2007).

The plain meaning of a term "begins with its 'ordinary, contemporary, common meaning.'" *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)). It is commonplace to consult dictionaries to ascertain a term's ordinary meaning. *See United States v. Rodgers*, 466 U.S. 475, 479 (1984); *McGee*, 511 F.3d at 1356; *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1353 (Fed. Cir. 2005). The primary definition of the noun "trauma" is "an injury or wound violently produced." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE 1942 (2d ed. unabridged 1955). As an adjective, "service" means pertaining to "the United States armed forces." *Id.* at 1658. Thus, the ordinary, contemporary, common meaning–or plain meaning–of "service trauma" is an injury or wound violently produced while the

4

injured or wounded is in the armed forces.[2]

We must also consider this ordinary definition within the statutory framework. Of particular relevance here is the phrase, "due to combat wounds or other service trauma."  38 U.S.C. § 1712(a)(1)(C).  The language is clear that a dental disability caused by combat wounds would entitle a veteran to outpatient treatment.  Further, the conjunction "or" coupled with the adjective "other" signifies that "combat wounds" are a type of "service trauma." Thus, the statute contemplates myriad types of service trauma that would entitle a veteran to outpatient dental treatment.  In requiring service trauma, moreover, section 1712(a)(1)(C) is more restrictive than other subparts of the statute.  For example, section 1712(a)(1)(B) provides entitlement based on any type of noncompensable service-connected dental condition or disability and sets forth the requirements that must be met to receive the benefit.  Namely, application must be made within 90 days after discharge or release.  *See* 38 U.S.C. § 1712(a)(1)(B)(iii).  Section 1712(a)(1)(A) allows for treatment if the service-connected condition is compensable in degree, and provides no other restrictions.

For the purposes of this appeal, section 1712(a)(1)(C) applies because Mr. Nielson does not have a compensable service-connected dental disability, which subpart (A) requires, nor did he meet the requirements of subpart (B).  The added restriction of subpart (C) that the disability be due to service trauma addresses Congress's intent to limit the indefinite entitlement to dental benefits to veterans with noncompensable service-connected dental disabilities.  *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (Court "must give effect to unambiguously expressed intent of Congress").  Only those veterans with a dental disability caused by a particular type of event are entitled to dental benefits under section 1712(a)(1)(C).  The ordinary definition described above fits into this statutory framework.

Therefore, based on the ordinary definitions and the context of the statutory scheme, we hold that the plain meaning of "service trauma" as used in section 1712 is an injury or wound violently produced while the injured or wounded is in the armed forces.  This meaning must be given effect.

---

[2]*See also* FUNK & WAGNALLS NEW PRACTICAL STANDARD DICTIONARY OF THE ENGLISH LANGUAGE 1194, 1387 (1955) (Service: "of, pertaining to, or belonging to the U.S. military or naval service"; Trauma: "[a]ny injury to the body or mind caused by shock, violence, etc.; a wound"); THE AMERICAN COLLEGE DICTIONARY 1107, 1289 (1955) (Service: "(a) the armed forces . . . (b) period or duration of active service"; Trauma: "a bodily injury produced by violence"); BLACK'S LAW DICTIONARY 1533, 1671 (4th ed. 1951) (Service: "employment in one of the office, departments, or agencies of the government"; Trauma: "[a] wound; any injury to the body caused by external violence").

*See Johnson* and *Gardner*, both *supra.* These terms are indeed unambiguous; therefore, judicial inquiry is complete. *See Smith, supra.* Accordingly, a veteran is entitled to VA outpatient dental services and dental appliances when he has a dental condition resulting from an injury or wound violently produced while the veteran was in the armed forces.

## B. Application of Statute

With this plain meaning of service trauma, we turn to the parties' arguments regarding whether the Board erred in finding that Mr. Nielson did not suffer a service trauma that would entitle him to outpatient dental treatment. In order for Mr. Nielson to succeed on his claim, his noncompensable service-connected loss of teeth must have resulted from service trauma. Mr. Nielson asserts that he experienced two events that should be accepted as service trauma. First, he maintains that his service aggravated his periodontal disease and constituted service trauma. Second, he contends that the actual extraction of his teeth without anesthesia was a service trauma.

The Board considered all of Mr. Nielson's contentions and found that "the removal of [Mr. Nielson's] teeth in service by military dentists due to periodontal infection(s) does not constitute 'service trauma.'" R. at 35. Although the Board relied on G.C. Prec. 5-97, which held that "the term 'service trauma' does not include the intended effects of treatment provided during the veteran's military service," G.C. Prec. 5-97, the General Counsel's opinion is of no consequence because the statute is clear on its face. The Board's reliance on the General Counsel's opinion, however, is not prejudicial to Mr. Nielson because the General Counsel's interpretation of the statute is consistent with the Court's holding. *See* 38 U.S.C. § 7261(b)(2) (Court shall take due account of rule of prejudicial error).

Both the Board and VA General Counsel reasoned that Mr. Nielson's teeth were extracted as treatment for his periodontal disease and not as a result of service trauma. By removing his teeth, they contend, the treatment objectives were met. Mr. Nielson requests that this Court conclude that "service trauma" encompasses his treatment for periodontal disease. Simply stated, the extraction of Mr. Nielson's teeth as a result of periodontal disease is not "service trauma" as contemplated by 38 U.S.C. § 1712(a)(1)(C). The Court cannot expand the plain meaning in a manner that would include extractions necessitated by disease. There has been no finding that Mr. Nielson's dental condition resulted from an injury or wound violently produced in the armed services. To the extent

that any of Mr. Nielson's other arguments suggest otherwise, his arguments are not persuasive.

## IV. CONCLUSION

On consideration of the foregoing analysis and the parties' pleadings, the Court AFFIRMS the Board's June 23, 2005, decision.