# United States Court of Appeals for the Federal Circuit

---

**THOMAS M. NIELSON,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2009-7129

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 05-2311, Judge Robert N. Davis.

---

Decided: June 7, 2010

---

KIRSTEN V.K. ROBBINS, Goodwin Procter LLP, of Washington, DC, argued for claimant-appellant. With her on the brief were FREDERICK C. SCHAFRICK and RICHARD A. ARCULIN.

MEREDYTH COHEN HAVASY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON,

Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel was ALLISON KIDD-MILLER, Trial Attorney.

———————————

Before RADER, *Chief Judge*,[*] DYK, and PROST, *Circuit Judges.*

DYK, *Circuit Judge.*

Thomas M. Nielson ("Nielson") appeals from a final judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying him entitlement to Department of Veterans Affairs ("VA") outpatient dental treatment and related dental appliances because the removal of his teeth during service was not due to a "service trauma" under 38 U.S.C. § 1712(a)(1)(C). *Nielson v. Shinseki*, 23 Vet. App. 56 (2009). We hold that a "service trauma" under the statute is an injury or wound produced by an external physical force during the performance of military duties, and does not include the intended result of proper medical treatment. Here, the VA found that Nielson's teeth were properly extracted due to periodontal infection. Accordingly, we affirm.

BACKGROUND

Nielson served on active duty in the United States Air Force from September 1950 to September 1954, and from March 1955 to October 1957. During his service in the Korean War, and when he was on active duty at a forward post in Korea, all but three of Nielson's teeth were extracted over the course of approximately one month, from August to September 1952. He received no anesthesia during the procedures and no pain killers after the procedures. While nearly all of Nielson's service records from

———————————

[*] Randall R. Rader assumed the position of Chief Judge on June 1, 2010.

the time are missing, his handwritten diary entries suggest that he suffered from a severe periodontal infection. Nielson's remaining three teeth were extracted in May 1953 after he returned to the United States. He was subsequently provided with dentures. Nielson's 1954 separation examination report documents that all of his teeth were missing.

In April 1991, Nielson submitted a claim to the VA seeking service connection for the loss of his teeth. He also sought a set of new dentures under what is now 38 U.S.C. § 1712(a)(1)(C). This statute provides veterans with outpatient dental care and related dental appliances for "service-connected dental condition[s] or disabilit[ies] due to combat wounds or other service trauma." 38 U.S.C. § 1712(a)(1)(C). The VA granted Nielson service connection for the loss of his teeth and assigned a non-compensable disability rating. However, the VA denied Nielson outpatient dental treatment because it found that his teeth extractions were not due to "combat dental injuries" or a "service trauma." *Nielson*, 23 Vet. App. at 57. The Board of Veterans' Appeals ("Board") affirmed that decision, and Nielson appealed. The Veterans Court remanded the matter, ordering the Board to "consult with" VA General Counsel on the definition of "service trauma" and its application to Nielson's claim. *Id.* at 58.

On remand, the VA General Counsel rendered an opinion stating that "from a legal or medical perspective trauma is an injury," and held that "[f]or the purposes of determining whether a veteran has . . . eligibility for dental care under [38 U.S.C. § 1712(a)(1)(C) and 38 C.F.R. § 17.161(c)], the term 'service trauma' does not include the intended effects of treatment" provided during the veteran's military service. VA Gen. Coun. Prec. No. 5-97 (Jan. 22, 1997); *see* VAOPGCPREC 5-97, 62 Fed. Reg. 15,566 (Apr. 1, 1997). The Board then found that Nielson

had not engaged in combat with the enemy during his time in Korea, that his teeth were removed most probably due to periodontal infection, and that the military dentists had not engaged in malpractice in extracting Nielson's teeth. The Board, relying on the VA General Counsel opinion, concluded that the removal of Nielson's teeth did not constitute a "service trauma" and Nielson was not entitled to outpatient dental treatment.[1]

Nielson again appealed to the Veterans Court. The Veterans Court considered the plain meaning of "service trauma" and the context of 38 U.S.C. § 1712(a)(1)(C), and held that the meaning of "service trauma" is "an injury or wound violently produced while the injured or wounded is in the armed forces." *Nielson*, 23 Vet. App. at 60. The court also agreed with the Board and VA General Counsel that "service trauma" does not encompass an intended treatment for periodontal disease. Because Nielson had not shown that his dental condition resulted from "an injury or wound violently produced," the court affirmed the Board's decision. Nielson timely appealed.

## DISCUSSION

We have jurisdiction to review decisions of the Veterans Court "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in

---

[1] In a separate decision issued on the same day, the Board reopened Nielson's claim of service connection for residuals of malnutrition relating to the removal of his teeth and remanded the issue for development of additional evidence. Nielson's claim of total disability based on individual unemployability was placed in abeyance awaiting resolution of the former matter. These claims, and any related claims for outpatient dental treatment, remain pending before the VA.

making the decision." 38 U.S.C. § 7292(a); *see Forshey v. Principi*, 284 F.3d 1335, 1359 (Fed. Cir. 2002) (en banc) ("We hold that we have jurisdiction over . . . issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation . . . ."). Under the statute as amended in 2002, *see* Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (codified at 38 U.S.C. § 7292(a)), we have jurisdiction to review all legal questions decided by the Veterans Court. *See Szemraj v. Principi*, 357 F.3d 1370, 1374–75 (Fed. Cir. 2004). We review a claim of legal error in a decision of the Veterans Court without deference. *Id.* at 1372.

This appeal requires us to construe the term "service trauma" in 38 U.S.C. § 1712(a)(1)(C), which provides:

> (a)(1) Outpatient dental services and treatment, and related dental appliances, shall be furnished under this section only for a dental condition or disability—
>
> . . .
>
> (C) which is a service-connected dental condition or disability due to combat wounds or other service trauma, or of a former prisoner of war . . . .

Nielson argues that the Veterans Court erred in construing the term "service trauma" in § 1712(a)(1)(C). Under Nielson's interpretation, the extraction of nearly all of a veteran's teeth during his time of service is a "service trauma." The government responds that "service trauma" does not include the intended result of proper medical treatment provided by the military. We agree with the government that 38 U.S.C. § 1712(a)(1)(C) is not so broad

as to include the intended results of proper medical treatment provided by the military.

The statute does not define "service trauma." When terms are not defined, it is a basic principle of statutory interpretation that they are deemed to have their ordinary meaning. *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982); *Perrin v. United States*, 444 U.S. 37, 42 (1979). For that meaning, it is appropriate to consult dictionaries. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91–92 (2006); *Lamar v. United States*, 241 U.S. 103, 113 (1916). The current edition of *Webster's* at the time of the statute's passage defined "trauma" first as simply "[a]n injury or wound, or the resulting condition." *Webster's New International Dictionary of the English Language* 2696 (unabr. 2d ed. 1948) ("*Webster's Second*"). It defined an "injury" as "[d]amage or hurt done to or suffered by a person or thing," *id.* at 1280, and a "wound" as "[a]n injury to the body of a person or animal, esp. one caused by violence, by which the continuity of the covering, as skin, mucous membrane, or conjunctiva, is broken," *id.* at 2956. Shortly after the statute's passage, *Webster's* updated the primary definition of "trauma" to read: "an injury or wound to a living body caused by the application of external force or violence." *Webster's Third New International Dictionary* 2432 (unabr. 1961); *see also Black's Law Dictionary* 1671 (4th ed. 1951) (defining "trauma" as "[a] wound; any injury to the body caused by external violence"); *Stedman's Medical Dictionary* 1416 (18th rev. ed. 1953) (defining "trauma" first as "[a] wound, an injury inflicted, usually more or less suddenly, by some physical agent").

Under these circumstances, we think that the prevailing definition of "trauma" at the time the statute was enacted was "an injury or wound produced by an external physical force." The pulling of teeth is an act of force that

could fit within that definition.  We do not, however, think that Congress in § 1712(a)(1)(C) intended to use the word "trauma" in this broad sense; nor do we think it reasonable to conclude that Congress intended to include proper dental treatment designed to remedy an injury or disease to be within the phrase "service trauma."  This is so for two reasons.

First, the language of the statute itself suggests that an expansive reading of the term "trauma" is inappropriate.  The word "trauma" does not stand alone in the statute.  It is part of the phrase "service-connected dental condition or disability due to combat wounds or other service trauma."  38 U.S.C. § 1712(a)(1)(C).  Congress has chosen to limit the types of injuries that fall under the statute to only a subset of service-connected dental conditions—that is, those involving "service trauma."  Construing "service trauma" broadly to include nearly any injury suffered while serving in the armed forces, even the intended results of proper medical treatment, would make the use of the word "service" superfluous, as it would be subsumed by the former category of service-connected conditions.[2]  *See Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2499 (2009) ("[O]ne of the most basic interpretive canons [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be

---

[2]  A service-connected disability is a disability "incurred or aggravated . . . in line of duty in the active military, naval, or air service."  38 U.S.C § 101(16); *Haas v. Peake*, 525 F.3d 1168, 1172 (Fed. Cir. 2008).  A disability is "incurred [or aggravated] in line of duty [if the] . . . injury was suffered or disease contracted[] in active military, naval, or air service, *whether on active duty or on authorized leave*."  38 U.S.C. § 105(a) (emphasis added); *see Shedden v. Principi*, 381 F.3d 1163, 1166 (Fed. Cir. 2004) (holding that "service-connected" and "incurred in line of duty" mean the same thing).

inoperative or superfluous, void or insignificant . . . ." (quoting *Corley v. United States*, 129 S. Ct. 1558, 1560 (2009)) (alterations in original)).

To ascertain the meaning of the phrase "other service trauma," we look to the interpretive canon of *ejusdem generis*. "Under the rule of *ejusdem generis*, which means 'of the same kind,' where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified." *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1308 (Fed. Cir. 2001) (quoting *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994)). Even "where a general term follows one expressly set forth specific term," as here, application of the rule is appropriate. *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1292 (Fed. Cir. 2008). Congress's use of "combat wounds or other service trauma" suggests that it intended to include only injuries sustained during the performance of military duties. *See, e.g.*, *Webster's Second*, *supra*, at 2288 (defining "service" as "[o]f or pertaining to one of the services"). It is also unreasonable to believe that Congress would have considered the intended results of proper medical treatment to be "of the same kind" as an injury sustained during combat.

Second, 38 U.S.C. § 1712(a)(1)(C) does not stand alone in the overall statutory scheme.

> It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995),

and "fit, if possible, all parts into an harmonious whole," *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959).

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). A related provision, 38 U.S.C. § 1151, sheds light on the meaning of § 1712(a)(1)(C). In the context of § 1151, both the Supreme Court and Congress have recognized that the intended result of proper medical treatment is not itself an "injury." Prior to 1996, § 1151 entitled veterans to VA compensation for "an injury, or an aggravation of an injury, [that occurs] as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation" supplied by the VA. 38 U.S.C. § 1151 (1994), *amended by* Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1997, Pub. L. No. 104-204, § 422(a), 110 Stat. 2874, 2926–27 (1996) ("VA Appropriations Act"). In *Brown v. Gardner*, the Supreme Court stated that "[i]t would be unreasonable . . . to believe that Congress intended to compensate veterans for the necessary consequences of treatment to which they consented (*i.e.*, compensating a veteran who consents to the amputation of a gangrenous limb for the loss of the limb)." 513 U.S. 115, 119 n.3 (1994). The Court's example is precisely analogous to the extraction of Nielson's teeth here. Indeed, when Congress amended § 1151 in 1996, it specified that only disabilities caused by medical treatment that involved "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault" would qualify. *See* VA Appropriations Act, 110 Stat. at 2926–27.

Given that the term "trauma" in § 1712(a)(1)(C) is defined as an "injury" in contemporaneous dictionaries, the construction of "injury" to exclude proper medical treatment suggests a similar construction of "trauma." This

interpretation is contrary to any construction of "service trauma" in § 1712(a)(1)(C) that includes the intended results of proper medical treatment.

Thus, we hold that "service trauma" in 38 U.S.C. § 1712(a)(1)(C) means an injury or wound produced by an external physical force during the service member's performance of military duties. This definition excludes the intended result of proper medical treatment, and is consistent with prior cases in which the VA has found a "service trauma."[3] We do not, however, suggest that an unintended result of medical treatment due to military negligence or malpractice could not be a "service trauma" under § 1712(a)(1)(C), and the government at oral argument agreed that injuries resulting from malpractice could be a "service trauma," depending upon the facts of the case.

Notwithstanding Nielson's contention, our approach is not contrary to the Supreme Court's mandate that "interpretive doubt is to be resolved in the veteran's favor." *See Brown*, 513 U.S. at 118; *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1378 (Fed. Cir. 2001). The mere fact that the particular words of the statute—that is, "service trauma"—standing alone might be ambiguous does not compel us to resort to the *Brown* canon. Rather, that canon is only applicable after other

---

[3]    *See, e.g.*, No. 96-48 881A, 2009 WL 1274689 (Bd. Vet. App. Mar. 11, 2009) (injuring teeth when hit in mouth by parachute cord); No. 06-28 330A, 2008 WL 5514423 (Bd. Vet. App. Nov. 26, 2008) (biting cherry pit and fracturing tooth); No. 04-03 335, 2008 WL 5511627 (Bd. Vet. App. Nov. 5, 2008) (chipping tooth by hitting on underside of truck); No. 07-20 409, 2008 WL 4954915 (Bd. Vet. App. Sept. 9, 2008) (fracturing teeth due to fall down hill); No. 06-32 262, 2008 WL 3583586 (Bd. Vet. App. June 3, 2008) (breaking teeth due to fall off ladder).

interpretive guidelines have been exhausted, including *Chevron*.[4]   Here, applying other interpretive tools, we conclude that § 1712(a)(1)(C) is not ambiguous.

One final matter requires attention.  Nielson argues that even if tooth extraction would not ordinarily be a "service trauma," a "service trauma" can be the psychological stress resulting from the pulling of teeth without anesthesia.  We reject that construction as well.  Under the only fair reading of the statute, a "trauma" must be a physical injury.  As noted above, the phrase "combat wound or other service trauma" in § 1712(a)(1)(C) indicates that a "service trauma" must be similar to a combat wound.  It is clear that "service trauma" refers to a physical injury suffered during service, not a psychological event.  Moreover, the loss of Nielson's teeth was not "due to" the psychological trauma of having his teeth extracted without anesthesia; it was "due to" the extraction of his teeth.  *See* 38 U.S.C. § 1712(a)(1)(C).  And, once again, the

---

[4]    *See Terry v. Principi*, 340 F.3d 1378, 1383–84 (Fed. Cir. 2003) (finding no interpretive doubt requiring the application of *Brown* following consideration of plain language of statute and *Chevron* analysis); *Nat'l Org. of Veterans' Advocates*, 260 F.3d at 1378 (turning to *Chevron* after noting that legislative history and *Brown* canon pushed in opposite directions); *Jones v. West*, 136 F.3d 1296, 1299 & n.2 (Fed. Cir. 1998) (noting that *Brown* not applicable because statute was clear when read in conjunction with another provision); *see also Sears v. Principi*, 349 F.3d 1326, 1331–32 (Fed. Cir. 2003) ("The appellant argues . . . that *Chevron* deference is inappropriate in veterans' cases such as this one, because any interpretive doubt in the context of veterans' benefits statutes is to be resolved in the veterans' favor. . . . We do not agree." (citation omitted)); *cf. Sursely v. Peake*, 551 F.3d 1351, 1355–57 & n.5 (Fed. Cir. 2009) (turning to *Brown* after other interpretive guidelines did not resolve ambiguity).

tooth extraction without anesthesia is excluded because it was the intended result of what was, under the circumstances, proper medical treatment.

In the present case, the Board found that military dentists extracted Nielson's teeth most probably due to periodontal infection, and that there was no evidence of malpractice in doing so. As the removal of Nielson's teeth was the intended result of the medical treatment, he did not suffer a "service trauma" under 38 U.S.C. § 1712(a)(1)(C), and he is thus not entitled to outpatient dental treatment and related dental appliances.[5]

## AFFIRMED

### COSTS

No costs.

---

[5] Those veterans with non-compensable service-connected dental conditions or disabilities that are not covered under § 1712(a)(1)(C), such as Nielson, can still avail themselves of 38 U.S.C. § 1712(a)(1)(B), which does not specify the manner in which the condition or disability occurred, and requires only that the veteran meet certain requirements such as length of service and timeliness of application. *See also* 38 C.F.R. § 17.161(b). Nielson, however, did not submit his application within the allotted period. Thus, his only recourse was to submit a claim under the more restrictive § 1712(a)(1)(C). *See Nielson*, 23 Vet. App. at 60.