# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2037

RONALD L. BURTON, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 11, 2018)            Decided September 28, 2018)

*Jill C. Davenport* and *Caitlin M. Milo*, with whom *Barton F. Stichman* was on the brief, all of Washington, D.C., for the appellant.

*Lavinia A. Derr* and *James B. Cowden, Deputy Chief Counsel*, with whom *James M. Byrne*, General Counsel; and *Mary Ann Flynn*, Chief Counsel; were on the brief, all of Washington, D.C., for the appellee.

Before SCHOELEN, GREENBERG, and ALLEN, *Judges.*

ALLEN, *Judge*: Ronald L. Burton served our country for nearly three decades in the United States Air Force. Record (R.) at 2344. He is service connected for tinea pedis (athlete's foot). R. at 2332-38. As part of his treatment for this condition, and as relevant to this appeal, he used Clobetasol, a topically applied corticosteroid, and Benadryl, an antihistamine. In the February 22, 2016, decision on appeal, the Board of Veterans' Appeals (Board) denied the appellant a disability rating greater than 10% for his tinea pedis. It also reopened and granted a claim for service connection for sleep apnea, favorable findings the Court will not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007).

This appeal, which is timely and over which the Court has jurisdiction, asks the Court to revisit Diagnostic Code (DC) 7806, 38 C.F.R. § 4.118, and its distinctions between the types of therapy used to treat certain skin disabilities. *See* 38 U.S.C. §§ 7266(a), 7252(a). We confront two distinct, albeit related, issues. First, we must determine the circumstances under which a topically applied corticosteroid may be a "systemic therapy" as contemplated by the Federal Circuit's decision in *Johnson v. Shulkin,* 862 F.3d 1351, 1354-56 (Fed. Cir. 2017). Specifically, the Court must address what "factual circumstances" the Federal Circuit meant could change a topical

treatment into a systemic therapy. Second, we must consider how this Court's decision in *Warren v. McDonald*, 28 Vet.App. 194 (2016), that DC 7806 includes treatments that are "like corticosteroids or other immunosuppressive drugs" applies in this case. As we explain below, because the Board failed to properly consider *Johnson* and *Warren* when it denied the appellant a higher rating for his tinea pedis, the Court will set aside the February 2016 Board decision and remand this matter for further proceedings as described in this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Following the appellant's 29 years in the U.S. Air Force, VA granted him service connection for tinea pedis in August 2001, assigning a noncompensable rating. R. at 2325-33. The appellant filed a claim for an increased rating in February 2010, R. at 1683, and underwent a VA examination the following month, R. at 2347-48. The examiner noted that the appellant was treated with a variety of topical treatments, including Clotrimazole, an antifungal agent, applied twice a day, but that he could not recall the identities of the other treatments he used. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 375 (32d ed. 2012) [hereinafter DORLAND'S]. The examiner concluded that "no systemic agents were used," although he did not define what he understood "systemic" to mean. R. at 2347-48.

VA denied a compensable rating in April 2010, a decision that the appellant appealed. R. at 1520-21. He underwent another VA examination in December 2011, in which the examiner noted his use of topical treatments, including Clotrimazole 1% constantly or near constantly during the past 12 months as well as Clobetasol, a corticosteroid. DORLAND'S at 373. The examiner noted he also used the antihistamine Benadryl, for less than 6 weeks. R. at 434-35. The examiner also noted that the appellant's tinea pedis covered 5% to 20% of his total body, but no exposed areas. R. at 437.

VA treatment records from May 2012 indicate that the appellant's medication dosages had increased and he was using Clobetasol daily and Clotrimazole two or three times a day. R. at 404. In February 2013, VA increased the appellant's tinea pedis rating to 10%, R. at 2511, and he perfected his appeal, R. at 665.

In the February 2016 decision on appeal, the Board denied a disability rating higher than 10% because the appellant did not require systemic therapy such as corticosteroids or other immunosuppressive drugs to treat his tinea pedis. The Board concluded that "while the record

demonstrates that the [appellant] has had constant or near constant treatment of [tinea pedis] with topical creams and the use of antihistamines, [the record] consistently reflects [the skin condition] does not require systemic therapy, such as corticosteroids or other immunosuppressive drugs." R. at 12. The Board relied on the VA examinations that noted the use of topical creams but no systemic agents.

## II. ANALYSIS

The appellant's tinea pedis is rated under 38 C.F.R. § 4.118, DC 7813-7806. *See* 38 C.F.R. § 4.27 (2018) (explaining that a hyphenated diagnostic code identifies "the exact source" of the disability rating assigned). To warrant a 10% rating under DC 7806, at least 5%, but less than 20%, of the entire body or exposed areas must be affected, or intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs are required for a total duration of less than 6 weeks during the past 12-month period. 38 C.F.R. § 4.118, DC 7806.[1] A 30% rating is warranted if between 20% and 40% of the entire body or exposed areas are affected, or if the appellant requires systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of 6 weeks or more, but not constantly, during the past 12-month period. *Id.* A 60% rating is warranted when more than 40% of the entire body or exposed areas are affected, or the appellant requires constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs during the past 12-month period. *Id.*

It is undisputed that the appellant does not qualify for a rating higher than 10% based on the percentage of his body affected by his tinea pedis. Rather, the key issue here concerns the types of treatment the appellant's tinea pedis requires and the frequency or duration of such treatment. The Board concluded the appellant was not entitled to a higher rating given the nature of his treatment. R. at 12. The Board's determinations concerning the degree of disability is a factual finding reviewed under the "clearly erroneous" standard of review. *Cullen v. Shinseki*, 24 Vet.App. 74, 78 (2010). The Court, however, reviews questions of law, such as the interpretation of a DC, de novo. *See Vilfranc v. McDonald*, 28 Vet.App. 357, 361 (2017).

---

[1] Effective August 13, 2018, VA amended this provision. *See* 83 Fed. Reg. 32,592 (July 13, 2018). We discuss this regulatory change further below, but it does not apply to claims filed before its effective date unless its application would benefit a veteran. *See* Secretary's Response to Court's August 8, 2018, Order (Secretary's Clarification) at 3.

To address the appellant's complaints about the Board's decision, the Court must discuss two of the appellant's treatments for his tinea pedis: (1) Clobetasol, which the parties agree is a corticosteroid, Secretary's Brief (Br.) at 7; Appellant's Br. at 10, and (2) Benadryl, which neither party argues is a corticosteroid or immunosuppressive drug, Secretary's Br. at 8-9; Appellant's Br. at 12. We will address each treatment in turn.

### A. Corticosteroid (Clobetasol) and the *Johnson* Issue

The appellant argues that the Board failed to provide an adequate statement of reasons or bases concerning his Clobetasol treatment because it did not address the factual circumstances of that treatment to determine whether this Clobetasol use may be considered systemic therapy, warranting a higher disability rating. Appellant's Br. at 11. He asserts that the Federal Circuit in *Johnson* cited the scale on which a topical treatment is administered as an *example* of the factual circumstances satisfying the definition of "systemic therapy," not as the only means by which a topical treatment could be deemed systemic therapy. *Id.* at 9. In response, the Secretary initially argued in his brief that the Board did not err in considering the appellant's use of Clobetasol because "the treatment is limited to topical therapy of a particular surface area that does not affect the body as a whole." Secretary's Br. at 7. This argument seemed to interpret *Johnson* to mean that a topical treatment can be systemic therapy only when it is administered on a large enough scale to affect the body as a whole. *Id.* But, at oral argument, the Secretary's counsel agreed with the appellant that in *Johnson* the Federal Circuit provided an example and that there are other factors that could cause a topical treatment to be considered a systemic therapy. *See* Oral Argument (O.A.) at 33:02-34:01, *Burton v. Wilkie*, U.S. Vet. App. No. 16-2037 (oral argument held July 11, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php. After oral argument, the Secretary filed a motion for leave to clarify his position, based on a regulatory change. *See* Secretary's Motion for Leave To File a Clarification at 1-2.

The Court granted the Secretary's request. In his clarification, the Secretary described the regulatory change to DC 7806 that took effect on August 13, 2018. *See generally* Secretary's Clarification. The Secretary explained that in a new introductory paragraph the amended DC provides that a topically applied treatment cannot qualify as a systemic therapy. *Id.* at 1,3. Though this change does not apply to claims filed before its effective date, the Secretary stated that VA will apply the version of the DC most favorable to veterans. *Id.* at 3.The Secretary reiterated his position from oral argument that under *Johnson* a topically applied treatment can be deemed

systemic therapy "if applied on a large enough scale" or if it "was otherwise shown to have systemic effects on a facts found basis." *Id.*

As we explain now, we conclude (in agreement with the parties) that the Federal Circuit did not mean to restrict the circumstances under which a topical therapy can be deemed a systemic therapy to the one illustration it mentioned. That example was just that – an example.

### 1. The *Johnson* Decision

In *Johnson*, the Federal Circuit reversed this Court's decision that under DC 7806 topical corticosteroids categorically constituted systemic therapy. 862 F.3d at 1352. Instead, the Federal Circuit held that the DC contemplated two types of therapy: systemic and topical. *Id.* at 1354. The court referenced *Dorland's Illustrated Medical Dictionary* in defining "systemic therapy." *Id.* at 1354-55. The court noted that "systemic" is defined as "pertaining to or affecting the body as a whole" and "therapy" is defined as "treatment of diseases." *Id.* at 1355. We will rely on these definitions to guide our analysis.

Although the Federal Circuit found a distinction between topical and systemic therapies, it made clear that sometimes a topical treatment can be systemic therapy. *Id.* at 1355-56. The Federal Circuit stated that "a topical corticosteroid could be considered either a systemic therapy or topical therapy based on the factual circumstances of each case." *Id.* at 1356. The court went on to opine that a topical therapy could be systemic if it was applied on a large enough scale. *Id.* at 1355. Yet, the Federal Circuit did not state whether the scale of administration is the only way a topical therapy could be systemic or if that was merely an example. We address this holding next.

### 2. The Meaning of Factual Circumstances

We hold that the "factual circumstances" *Johnson* discussed by which a topical treatment may become a systemic therapy under DC 7806 are not limited to situations involving large scale topical application. If one were to read *Johnson* as limiting the "factual circumstances" by which a topical treatment can be deemed a systemic therapy to only the scale of application, much of DC 7806 would become essentially redundant. As we have described, DC 7806 provides for rating a disability in two potential ways, percentage of the body (or exposed areas) affected and the frequency or duration of use of a systemic therapy. If the Federal Circuit in *Johnson* meant that a topical treatment can be considered a systemic therapy based only on the scale of application, that interpretation would make redundant to a substantial degree (perhaps functionally entirely) the DC's reference to the percentage of the body affected by the skin condition.

As a general matter, a court should avoid adopting an interpretation of a statute or regulation that renders other statutory or regulatory provisions a nullity. *See Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006); *see also Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988). The better reading of *Johnson* avoids such a result. Our reading is also consistent with a more natural reading of *Johnson*. Had the Federal Circuit meant to restrict its use of the term "factual circumstances" to large scale topical application, one would think the court would have done so more directly. After all, courts rarely seek to inject uncertainty into their decisions. And, why would the Federal Circuit have used the plural "circumstances" had it really meant the singular "circumstance"? We hold that large scale application is merely an example of a factual circumstance that can convert topical treatment into a systemic therapy.

The question then becomes, what are other "factual circumstances" of topical treatments that can cause them to become systemic therapies? In this matter, the parties have suggested two such potential avenues: (1) The method by which the treatment works to treat the medical condition and (2) the side effects that are possible or actually experienced as a result of the topical treatment. Creating an exhaustive list of such circumstances is beyond the scope of this matter; however, in addressing the two sets of factual circumstances raised here, we hope to provide some guidance for assessing potential avenues.

a. The Method by which a Treatment Works

As discussed above, the Federal Circuit in *Johnson* adopted the *Dorland's* definitions of systemic and therapy. *Supra* Part III, Section A.1. When those definitions are taken together, for a treatment to be systemic therapy warranting a higher disability rating, DC 7806 requires a treatment to "pertain to or affect the body as a whole" and to operate as "treatment of disease." *Johnson*, 862 F.3d at 1355. Therefore, to qualify as a systemic therapy it is not enough that the treatment standing alone affects the entire body. Rather, it must affect the entire body in its treatment of the condition at issue.

We read these definitions in *Johnson* to mean that the Board must determine whether a topical treatment *operates* by affecting the body as a whole in treating the veteran's skin condition. Stated a different way, the Board must decide how the topical treatment works – not by its contact with the affected location of the condition on the body, but instead in some other way that affects the body more broadly. For example, a topical treatment may affect the body as a whole if it circulates through the bloodstream. Thus, in affecting the body as a whole, it essentially would not

matter whether the topical treatment was applied where the condition was located or some other part of the body, as the body in its entirety would be involved in the treatment.

How a topical treatment works is a factual question that may, but not necessarily, require a medical opinion for its resolution. The Board may make such a factual finding based on other evidence, such as medical dictionaries. *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) (citing *United States v. Rodgers*, 466 U.S. 475, 479 (1984)). But, the Board is limited in its ability to make its own independent medical determinations. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991).

In this case, the Board erred by failing to consider whether the appellant's use of Clobetasol was systemic therapy. The Board's analysis stopped at the determination that Clobetasol was applied topically and therefore not systemic therapy. *See* R. at 12. The Board did not discuss whether in its treatment of the appellant's skin condition Clobetasol affects his body as a whole.

The Court notes that the Board's incorrect analysis of the topical Clobetasol treatment perhaps is not surprising given the unhurried pace at which VA has implemented the Federal Circuit's *Johnson* decision. First, the *VA Adjudication Procedures Manual* (M21-1), at the time of the Board's decision, and still today, precludes adjudicators from considering whether a topical treatment can be a systemic therapy: The M21-1 categorically states that a topically applied treatment can never be a systemic therapy. *See* VA ADJUDICATION PROCEDURES MANUAL (M21-1), pt. III, subpt. iv, Ch. 4, sec. J.3.f (effective Oct. 5, 2015); *see id.*, pt. III, subpt. iv. ch. 4, sec. L.1.f (effective May 14, 2018) (revised Aug. 13, 2018, to reflect the regulatory change in 38 C.F.R. § 4.118, effective Aug. 13, 2018) (last checked Sept. 12, 2018).

The M21-1 expressly conflicts with *Johnson*. 862 F.3d at 1355. The M21-1 specifically reads that treatments "that are applied topically (directly to the skin), including topical corticosteroids or immunosuppressives, are not considered systemic for VA purposes." *See id.*, pt. III, subpt. iv, ch. 4, sec. L.1.f (effective May 14, 2018); *see also id.*, pt. III, subpt. iv, ch. 4, sec. J.3.f (effective Oct. 5, 2015). Although the M21-1 is not binding on the Board, it is a source often consulted by the Board. *See DAV v. Sec'y of Veterans Affairs*, 859 F.3d 1072, 1077 (Fed. Cir. 2017); *see also Gray v. Sec'y of Veterans Affairs*, 875 F.3d 1102, 1106 (Fed. Cir. 2017). At oral argument, the Secretary conceded that the M21-1's position was clearly wrong under *Johnson* but that the manual had not been changed to reflect *Johnson*. O.A. at 27:47-29:06. The Secretary's clarification describes the regulatory change as adopting the same bright line rule that appears in the M21-1. *See* Secretary's Clarification at 4. But it is clear that the M21-1 is inconsistent with

*Johnson*. The Secretary's delay of a year and counting in updating VA's materials to comply with a Federal Circuit decision is unacceptable and especially egregious because it is not the first time that VA has delayed in implementing a court directive. *See* O.A. at 29:40-30:09 (discussing *Staab v. McDonald*, 28 Vet.App. 50 (2016)).

As noted above, after continued delay in updating the M21-1 to reflect *Johnson*, VA published a final rule and changed DC 7806, effective August 13, 2018. There is nothing wrong with an administrative agency engaging in rulemaking, as VA has done, when it disagrees with a judicial interpretation of a regulation. Provided the agency follows the appropriate procedures, such rulemaking is a prime example of how separation of powers operates in American Government. An agency can change the law going forward. But what an agency may not do is refuse to implement a court's decision while the agency seeks to change a regulation to conform to its view. Such refusal is antithetical to separation of powers. It is not acceptable in a country governed by the rule of law. VA should stop these actions of its own accord. Otherwise, the courts will have to act to preserve the constitutional separation of powers. The effective date for VA's regulatory change is August 13, 2018, and the new provision expressly provides that "claims pending prior to the effective date will be considered under both old and new rating criteria, and whatever criteria is more favorable to the veteran will be applied." 83 Fed. Reg. at 32,593, 32,596. Thus, the appellant's claim should be considered under the "old" criteria based on the standards we have described as well as under the "new" criteria. But, it is difficult for us to fathom how the "new" regulatory provision would be more favorable in this case. Of course, we leave that initial determination to the Board on remand.

The Secretary also argues that the Board's decision can be affirmed based on the medical evidence in the record. Secretary's Br. at 10-11. In its decision, the Board relied on March 2010 and December 2011 VA medical opinions to support its conclusion that the appellant's Clobetasol treatment was not systemic therapy. R. at 11-12. Relying on these examination reports does not help the Board. The Disability Benefits Questionnaire (DBQ) the examiners used, similar to the M21-1, presents a binary choice when describing a treatment as either topical or systemic. R. at 434-35. Specifically, the DBQ asks that the examiner indicate (by marking a box) whether the veteran uses "systemic corticosteroids or other immunosuppressive medications," without asking whether that medication is topical; and when asked whether a veteran uses a "topical corticosteroid," the examiner is not asked whether it is systemic therapy. *Id.* As the appellant noted

8

at oral argument, the *VA Clinician's Guide* had instructions to examiners very similar to those provided in the M21-1: "State whether medications used are systemic or topical." *See* O.A. at 24:50-25:20; VA CLINICIAN'S GUIDE § 2.24(b)(2) (2015). Thus, it is not clear whether the VA examiners considered the appellant's use of topical Clobetasol as a potentially systemic therapy, given that the instructions they received were incorrect as a matter of law. Once again, the Board did nothing to explain its reasoning in this regard. And finally, the examiners did not define "systemic,", and the Board did not take any steps to address this question either.

Based on the above, remand is required because the Board failed to provide an adequate statement of reasons or bases for its discussion of the appellant's Clobetasol use. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998). In considering the matter on remand, the Board must discuss the factual circumstances of the appellant's topical Clobetasol use and whether this use can be considered systemic therapy based on the principles we have articulated.

### b. Side Effects

At oral argument, the parties also raised the issue of whether side effects of a topical treatment are "factual circumstances" that could can that treatment to be considered a systemic therapy. Given the definition of "systemic therapy" *Johnson* provided, we reject the relevance of side effects in determining whether a topical treatment is a systemic therapy. It is simply not enough under DC 7806 for something to be systemic; it must also be treatment for the condition. Therefore, if a treatment does not affect the body as a whole in the way in which it treats a skin condition, it cannot be considered systemic *therapy* for that skin condition, regardless of whether side effects result.

As the Secretary pointed out at oral argument, side effects can raise the possibility of secondary service connection. O.A. at 34:54-35:12. But, they are irrelevant to determining whether a topical treatment is a systemic therapy for the purposes of a higher disability rating under DC 7806.

### B. Non-Corticosteroid or Immunosuppressant (Benadryl) and the *Warren* Issue

The appellant also argues that the Board failed to provide an adequate statement of reasons or bases for its conclusion that there was no evidence of systemic therapy for his condition by his use of something "like" corticosteroids or immunosuppressive drugs. Appellant's Br. at 12. Specifically, he argues that the Board failed to address whether Benadryl is like or similar to a corticosteroid. If it were, and if its use was systemic therapy, he might be entitled to a higher rating

9

under DC 7806 under this Court's decision in *Warren v. McDonald*. *Id.*; *Warren*, 28 Vet.App. 194 (2016). Although neither party argues that Benadryl is a corticosteroid or an immunosuppressive drug, the Secretary suggests that the Board did not need to reach the issue whether Benadryl was "like" a corticosteroid or other immunosuppressive drug because that inquiry is only relevant once a determination has been made on whether the treatment is a systemic therapy used for a certain period of time. Secretary's Br. at 8.

In *Warren*, this Court held that "systemic therapy" in DC 7806 was not limited to corticosteroids or immunosuppressive drugs. 28 Vet.App. at 197. Rather, the use of the phrase "such as" in DC 7806 before "corticosteroids or other immunosuppressive drugs" means that "those drug types do not constitute an exhaustive list of all compensable systemic therapies, but rather serve as examples of the kind and degrees of treatments used to justify a particular disability rating." *Id.* Therefore, the Board must determine whether a given treatment is "like" a corticosteroid or other immunosuppressive drug in determining whether the treatment constituted a systemic therapy to warrant a higher rating. *Id.*

We hold that nothing in *Warren* requires a certain order in which the Board must determine if a treatment is a systemic therapy or like a corticosteroid or immunosuppressive drug. Both elements must be present to justify a higher rating under DC 7806, but the order in which they are addressed is of no import. Therefore, the Court holds that remand is warranted in this case because the Board did not address whether Benadryl was "like" corticosteroids or other immunosuppressive drugs. And, in any event, even if the sequence of these questions mattered, the Board did not address whether Benadryl constitutes a systemic therapy according to the definition discussed above. As the Secretary conceded, it appears, however, that Benadryl would be considered a systemic therapy in terms of "affecting the body as a whole." O.A. at 46:40-54.

As with determining whether a treatment is a systemic therapy, whether Benadryl is like corticosteroids or other immunosuppressive drugs is a factual question to be addressed by the Board in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000); *see also* 38 U.S.C. § 7261(c). Again, the Court notes that the Board must be cognizant that the Board is prohibited from making its own medical judgments in answering these questions. *See Colvin*, 1 Vet.App. at 175. We suspect that in many cases, the answer to this question will require a medical opinion. But we do not hold that such an opinion is categorically required.

Finally, the Secretary argues that the Board's failure to discuss Benadryl and whether it is "like" corticosteroids or immunosuppressive drugs is harmless error. Secretary's Br. at 8-9. He points out that the evidence of record showed that the appellant used Benadryl for less than 6 weeks, which would preclude a higher disability rating. *Id.* But, the Board appears to have made a different finding. In its decision, the Board noted the appellant's "use of antihistamines for more than six weeks" and later described such use as "constant or near constant." R. at 12. This finding appears to be favorable, and the Court may not disturb it. *See Medrano*, 21 Vet.App. at 170. The Secretary argues that the Board was applying the "constant or near constant" language to the use of a topical cream and not Benadryl. O.A. at 44:27-45:30. But, the Court finds this reading of the Board's language unnatural. At the very least, the different possibilities raised by the Board's decision further underscore the need for adequate reasons or bases.

The Court is unable to conclude that the Board's flawed analysis of the appellant's use of Benadryl to treat his tinea pedis is harmless. *See* 38 U.S.C. § 7261(b)(2); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2006). Thus, remand is required. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

## C. A Final Matter

As noted above, the appellant has used Clotrimazole to treat his tinea pedis throughout the period on appeal. R. at 404, 2347. Although it is a topically applied treatment, like Clobetasol, it is not clear whether it is either a systemic therapy or similar to a corticosteroid or other immunosuppressive drug under the standard we have set forth. Therefore, in considering this matter on remand, the Board must analyze the use of Clotrimazole under the rules provided by *Johnson* and *Warren* as laid out in this decision.

## D. Summary

The Court concludes that judicial review is frustrated and remand is warranted for the Board to provide an adequate statement of reasons or bases in considering whether use of Clobetasol, a corticosteroid, is a systemic therapy and in determining whether Benadryl is "like" a corticosteroid or immunosuppressive drug and a systemic therapy used for more than 6 weeks. *See id.*; *see also Tucker*, 11 Vet.App. at 374. Because the Court is remanding this matter to the Board for readjudication, the Court need not now address the appellant's remaining arguments, including those related to his other tinea pedis treatments, and he can present them to the Board below. *Best v. Principi*, 15 Vet.App. 18, 20 (2001). On remand, the appellant may submit additional evidence and argument and has 90 days to do so from the date of VA's postremand notice. *Kutscherousky*

11

*v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92 (2018). The Board must consider any such additional evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also proceed expeditiously. 38 U.S.C. §§ 5109B, 7112.

### III. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court SETS ASIDE the February 22, 2016, Board decision and REMANDS the matter for further proceedings consistent with this opinion.