# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-4788

ROBERT W. JENSEN, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 20, 2017                                        Decided September 12, 2017)

*Alexandra O. Lio*, of Providence, Rhode Island, was on the brief for the appellant. *Sarah K. Barr*, of Providence, Rhode Island, argued before the Court.[1]

*Sarah W. Fusina*, of Washington, D.C., with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, BARTLEY, and GREENBERG, *Judges*;

PIETSCH, *Judge*: filed the opinion of the Court. BARTLEY, *Judge*, filed a concurring opinion.

PIETSCH, *Judge*: The appellant, Robert W. Jensen, appeals through counsel an October 22, 2015, Board of Veterans' Appeals (Board) decision in which the Board denied him entitlement to specially adapted housing (SAH) and a special home adaptation grant. Record (R.) at 3-17. At oral argument, the parties agreed that the only issue before the Court is whether the appellant is entitled to SAH. The Court therefore will dismiss the appellant's appeal of the Board's disposition of his claim for entitlement to a special home adaptation grant. *See Cacciola v. Gibson*, 27 Vet.App. 45, 56-57 (2014).

This appeal is timely and the Court has jurisdiction over the matter on appeal pursuant to 38 U.S.C. §§ 7252(a) and 7266. On November 23, 2016, the Court formed a panel to define the phrase "loss, or loss of use" as it appears in 38 U.S.C. § 2101(a)(2)(B)(i) and 38 C.F.R.

---

[1] Attorney Lio withdrew from this case before oral argument.

§ 3.809(b)(1). For the reasons that follow, the Court will reverse the Board's conclusion that the appellant is not entitled to SAH and remand this case for the Board to determine a suitable award.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from May 1981 until May 1984. R. at 1442. In October 1984, the VA regional office (RO) granted him entitlement to disability benefits for the residual effects of a fracture in his right foot and, in April 2002, it granted him entitlement to disability benefits for degenerative disc disease in his lumbar spine. R. at 1290-95, 461-62. In October 2006, the RO granted him entitlement to a total disability rating based on individual unemployability (TDIU) effective October 31, 2005. R. at 1182-86.

The appellant reported that he began using a cane in 2004. R. at 1001, 1003. Soon thereafter, he asserted, his "physical condition was deteriorating to the point where it was getting difficult to even get up and move around." R. at 1002-03; *see also* R. at 1296. In March 2008, a nurse practitioner wrote that "paper records that have been completed by other physicians prior to me have identified that he is severely limited in ability to walk due to his condition and that he must adhere to limitations that had been previously established by Dr. Hunsinger." R. at 1095.

The appellant's care providers recommended that he attend aqua therapy sessions to alleviate the symptoms of his disabilities. R. at 1001-02, 1042, 1095. He found aqua therapy to be beneficial and believed that it slowed the progression of his disorders. *See* R. at 1002 ("If I hadn't started the aqua therapy there is no doubt I would have been in a wheelchair at this point in time"); *see also* R. at 1108, 1171. He reported, however, that the travel and expense necessary to attend therapy sessions had become onerous. R. at 1002, 1006, 1108.

In October 2007 and February 2008, the appellant filed a claim for entitlement to SAH. R. at 1108-10, 1160, 1171. He asked VA for a one-time grant of $50,000 to defray the cost of installing a heated therapy pool in his home. R. at 1007, 1042, 1108, 1171.

In March 2008, the RO denied his claim. R. at 1713-17. In an October 2008 appeal to the Board, the appellant stated that "in order to ambulate, I require the use of a cane or very often Canadian Crutches." R. at 1043. He asserted that "without the assistance of prosthetic devices and daily aqua-therapy, I would no longer have the use of both lower extremities." *Id.* In a February 2009 hearing before a decision review officer, the appellant stated that without a cane he "can walk short distances . . . twenty or thirty feet at most." R. at 1001, 1003.

2

In November 2010, a VA medical examiner reported that the appellant has a "[g]nawing dull ache" in his lower back "which becomes sharper as day progresses and pain intensifies." R. at 424. The appellant used a cane and brace to walk, had an antalgic gait, and was "[u]nable to walk more than a few yards." R. at 434. In May 2011, the appellant reported that his "right leg drags due to the damage in my back." R. at 388. He stated that he experiences one to two falls each week. R. at 389.

In March 2012, a VA examiner noted that the appellant was "able to get up and down from his chair and on and off the exam table independently but with back pain reported. He is able to raise himself from a reclining position on the exam table but reports back pain. He is able to take off/put on shoes and socks independently." R. at 161. In July 2012, the Board remanded the appellant's SAH request for additional development. R. at 178-81.

According to a September 2012 VA medical examination report, the appellant stated that he experiences "intermittent sharp knife-like pains, tingling, pins and needles affecting feet. . . . Sometimes the Lower extremity feels like it's not there." R. at 147. The examiner reported that he had mild constant pain, moderate intermittent pain, moderate "paresthesias and/or dysesthesias," and mild numbness in his lower extremities. R. at 147-48. The examiner noted that he "is using a cane but there is no limp or favoring of the leg at this time. [He] reports that findings can be different depending on his pain level." R. at 150. In December 2012, the RO again denied him entitlement to SAH. R. at 140-45.

In March 2013, the RO granted the appellant entitlement to disability benefits for radiculopathy in both lower extremities effective November 21, 2011, and assigned matching 10% disability ratings to compensate him for the effects of his disorder. R. at 82-87. By May 2014, VA also had granted him entitlement to disability benefits for degenerative disc disease in his cervical spine, a urinary condition "associated with degenerative disc disease, lumbar spine," and special monthly compensation (SMC). R. at 35. His combined monthly disability rating (excluding TDIU) is 90%. R. at 36. On October 22, 2015, the Board issued the decision here on appeal. R. at 3-17.

## II. APPLICABLE LAW AND BOARD DECISION

Pursuant to 38 U.S.C. § 2101(a)(1), "the Secretary may assist a disabled veteran . . . in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the

3

nature of the veteran's disability, and necessary land therefore."  A veteran eligible for this benefit is one who is "entitled to compensation . . . for a permanent and total service-connected disability that meets any of the criteria described in subparagraph (B)."  38 U.S.C. § 2101(a)(2)(A)(i).

The Board did not find and the Secretary did not argue that the appellant does not meet the "permanent and total service-connected disability" requirement.  *Id.*  The parties agree that installation of a heated therapy pool is a type of SAH available under section 2101(a).  The appellant is entitled to the payment that he seeks, therefore, if he "meets any of the criteria described in subparagraph (B)."  *Id.*

The portion of subparagraph (B) that applies to this case states that, to be eligible for SAH, a veteran's disability must be "due to the loss, or loss of use, of both lower extremities such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair."  38 U.S.C. § 2101(a)(2)(B)(i).  The Board made no findings against the appellant concerning the phrases "due to" and "both lower extremities."  The Board determined that the appellant's locomotion is "precluded . . . without the aid of braces, crutches, canes, or a wheelchair."  R. at 16.  That finding is favorable to the appellant.  The Court, therefore, will not disturb it.  *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007).  The Board also concluded, however, that the appellant's "service-connected disabilities do not result in the loss of use of . . . lower extremities."  R. at 16.  The only question raised by this case, then, is whether his disabilities produce a "loss of use" of both of his lower extremities.  *See* R. at 12 ("The crux of this case concerns whether the [appellant] has loss or loss of use of his bilateral lower extremities").

The essential position taken by the Board and the Secretary is that the phrase "such as" in section 2101(a)(2)(B)(i) means "and."  In the Board's view, had Congress been more clear, it would have written that a veteran is eligible for SAH if his permanent disability produces (1) loss, or loss of use of both lower extremities; AND (2) precludes locomotion without the aid of braces, crutches, canes, or a wheelchair.  The appellant asserts that the Board erred by ignoring the plain meaning of the phrase "such as."  He argues that section 2101(a)(2)(B)(i) clearly conveys that a "loss of use" exists if a veteran's locomotion is precluded without the aid of braces, crutches, canes, or a wheelchair.

The appellant's position benefits from its simplicity.  In his view, Congress defined lower extremity "loss of use" in the SAH context in the very sentence that contains that phrase.  The Board, on the other hand, recognized that for its interpretation of section 2101(a)(2)(B)(i) to be

4

plausible, it had to import a definition for "loss of use" from elsewhere. The regulation implementing section 2101(a)(2)(B)(i) is no help. The Secretary chose not to define "loss of use" in that provision. *See* C.F.R. § 3.809(b)(1) (2017). The Board turned instead to a regulation containing eligibility requirements for SMC.

Pursuant to 38 U.S.C. § 1114(l), a veteran may be entitled to receive SMC if he "has suffered the anatomical loss or loss of use of both feet." In 38 C.F.R. § 3.350(a)(2)(i), the Secretary wrote that

> Loss of use of hand or foot will be held to exist when no effective function remains other than that which would be equally well served by an amputation stump at the site of election below elbow or knee with use of a suitable prosthetic appliance. The determination will be made on the basis of the actual remaining function, whether the acts of grasping, manipulation, etc., in the case of the hand, or of balance, propulsion, etc., in the case of the foot, could be accomplished equally well by an amputation stump with prosthesis; for example:
>
> (a) Extremely unfavorable complete ankyloses of the knee, or complete ankyloses of two major joints of an extremity, or shortening of the lower extremity of 3 1/2 inches or more, will constitute loss of the hand or foot involved.
>
> (b) Complete paralysis of the external popliteal nerve (common peroneal) and consequent footdrop, accompanied by characteristic organic changes including trophic or circulatory disturbance and other concomitants confirmatory of complete paralysis of this nerve, will be taken as loss of use of the foot.

The Board found that the appellant's symptoms are not as severe as those described by § 3.350(a)(2)(i). R. at 16-17. It concluded, therefore, that he has not suffered a "loss of use" and is not entitled to SAH. The Secretary adopted the Board's position during briefing and at oral argument.

## III. ANALYSIS[2]

### A. Applicability of § 3.350(a)(2)(i)

"The interpretation of a statute is a question of law that the Court reviews de novo." *Cook v. Snyder*, 28 Vet.App. 330, 338 (2017). The Court begins by asking "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Resources*

---

[2] On March 17, 2017, the appellant filed a motion for leave to submit a citation to supplemental authorities out of time. That motion is granted.

*Defense Council, Inc.*, 467 U.S. 837, 842 (1984). If so, then "that is the end of the matter." *Id.* at 842-43. If not, then the Court reviews the regulation implementing the statute that it must interpret to determine whether it is "based on a permissible construction of the statute" and thus entitled to deference. *Id.* at 843.

Assuming for the moment that section 2101(a)(2)(B)(i) does not plainly convey Congress's intent, then § 3.809(b), which does not add to the statute in terms of defining "loss, or loss of use," is no less vague. When a "regulation essentially 'parrots' the statutory language[,] it does nothing to interpret or elaborate. As such, any interpretation of this regulation by VA is not entitled to deference." *Mulder v. McDonald*, 805 F.3d 1342, 1346 n.1 (Fed. Cir. 2015); *see also Cook*, 28 Vet.App. at 339 (When a regulation contains "the same basic ambiguous language" as the statute that it implements, "the Court is under no obligation to accord deference to the Secretary's interpretation under *Chevron* step two").

"Where a court concludes that *Chevron* deference is inapplicable, the court proceeds with the task of statutory interpretation guided by the principles of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Cook*, 28 Vet.App. at 340. Pursuant to *Skidmore*, the Court "may properly resort for guidance" to the Secretary's arguments. 323 U.S. at 140. "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*

For the reasons stated below, statutory and regulatory history and other interpretive factors reveal that "loss, or loss of use" in section 2101(a)(2)(B)(i) is not defined by § 3.350(a)(2)(i) and that the Secretary's arguments are not persuasive. *See Breniser v. Shinseki*, 25 Vet.App. 64, 76-77 (2011) ("Thus, [a] given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies.'") (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)); *see also King v. Burwell*, 135 S. Ct. 2480, 2493 n.3 (2015) ("'[T]he presumption of consistent usage readily yields to context,' and a statutory term may mean different things in different places") (quoting *Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2441 (2014)).

### 1. Statutory and Regulatory History

On March 31, 1933, President Franklin D. Roosevelt authorized payment of SMC to veterans who had suffered "anatomical loss of both feet." Veterans Regulation No. 1, pt. II, para.

II(g).  Within months, the president issued an executive order changing that provision to read "anatomical loss or loss of use."  Veterans Regulation No. 1(a), pt. II, para. (II)(l).  The amended regulation did not define those terms.

In June 1948, VA promulgated the precursor to § 3.350(a)(2)(i).[3]  Extension 3, Schedule for Rating Disabilities, 1945 Edition.  Also in June 1948, Congress authorized VA to aid a veteran "who is entitled to compensation under the provisions of this regulation for permanent and total service-connected disability due to spinal-cord disease or injury with paralysis of the legs and lower part of the body in acquiring a suitable housing unit."  P.L. 80-702; 62 Stat. 500 (June 1948).  Congress's meaning was plain.  A veteran could not receive SAH unless a spinal cord disorder caused paralysis in his "legs and lower part of the body."  *Id*.

Almost immediately, Congress began to expand SAH eligibility.  In September 1949, Congress decided to make SAH available to any veteran who has "a permanent and total service-connected disability due to the loss, or loss of use, by reason of amputation, ankyloses, progressive muscular dystrophies, or paralysis, of both lower extremities, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheel chair."  P.L. 81-286; 63 Stat. 688 (September 1949).  A decade later, Congress further liberalized SAH eligibility by amending the law into its current form.[4]  P.L. 86-239; 73 Stat. 472 (September 1959).

When Congress eliminated the phrase "by reason of amputation, ankyloses, progressive muscular dystrophies, or paralysis," it made clear that a veteran is no longer required to show that he has one of those disorders to obtain SAH.  VA recognized as much.  The original version of § 3.809(b) matched the version of section 2101(a)(2)(B)(i) that required a veteran seeking SAH to demonstrate that his care providers had diagnosed him with one of the listed disorders.  VA Transmittal Sheet 202 (May 29, 1959).  In February 1962, VA changed § 3.809(b) to match the new version of section 2101(a)(2)(B)(i).  VA Transmittal Sheet 233 (February 21, 1962).  VA deputy administrator W.J. Driver explained that Congress's "amendment of this paragraph includes the liberalizing provisions of Public Law 86-239.  This act eliminated as a requirement for

---

[3] At the time, the agency currently known as the Department of Veterans Affairs was called the Veterans Administration.  The Court will use the acronym VA to refer to both names.

[4] In the Veterans' Benefits Act of 1957, Congress consolidated all of "the laws administered by VA" "into one Act."  P.L. 85-86; 71 Stat. 83 (June 1957).  It did not make substantive changes to the provisions at issue in this case.

eligibility for specially adapted housing the limitations as to etiology in claims involving loss or loss of use of both lower extremities." *Id.*

### 2. *Interpretation*

The most apparent reason that § 3.350(a)(2)(i) does not define the terms found in section 2101(a)(2)(B)(i) is that those two provisions apply to different abnormalities. Section 2101(a)(2)(B)(i) sets the standard for awarding SAH to a veteran suffering from a loss of use of *lower extremities*. Section 3.350(a)(2)(i) defines loss of use of a *foot*. The term "lower extremity" may include the foot but also the entirety of the "lower limb." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 665 (32d ed. 2012). There is nothing before the Court that demonstrates that a provision describing the meaning of loss of use of the terminus of the lower extremity adequately describes the meaning of the term loss of use as applied to the entirety of the lower extremity, nor is there any evidence that Congress understood the term "loss of use of . . . foot" to be equivalent to "loss of use, of both lower extremities."[5]  38 USC § 2101(a)(2)(B)(i); 38 C.F.R. § 3.350(a)(2)(i).

Furthermore, other parts of § 3.350 reveal that the Secretary did not believe that § 3.350(a)(2)(i) was sufficient to describe loss of use of the lower extremity in the SMC context. Section 1114(m) allows for SMC for "loss of use . . . of both legs with factors preventing natural knee action with prostheses in place" and section 1114(n) allows for SMC for "anatomical loss of both legs with factors that prevent the use of prosthetic appliances." In § 3.350(a)(3)(ii), the Secretary indicated that section 1114 "(l) through (n)" are provisions that collectively describe "loss or loss of use of both lower extremities."

The Secretary expanded upon that understanding in another subpart of § 3.350. Labeled "extremities," that subpart contains provisions that allow for hybrid benefits when a veteran has loss of use of a foot as defined by § 3.350(a)(2)(i) and additional loss of use of a leg.  38 C.F.R. § 3.350(f)(1).  If loss of use of a foot did not constitute loss of use of other parts of the lower extremity for SMC, then surely it should not for SAH.

---

[5] The examples of disorders that cause a loss of use of the foot that the Secretary wrote into § 3.350(a)(2)(i) do not show otherwise. Some of those examples include abnormalities that affect some or all parts of the lower extremity above the knee. Those examples, however, are given for the express purpose of demonstrating the kinds of disorders that "will constitute loss of the . . . foot involved" and do not shed light on what constitutes loss of use of the entire extremity. 38 C.F.R. § 3.350(a)(2)(i)(a), (b).

The provisions discussed above reveal that the Secretary's proposed interpretation of section 2101(a)(2)(B)(i) is the product of a rhetorical sleight of hand. He asks the Court to determine that the term "loss of use" is severable from the words "lower extremities" in section 2101(a)(2)(B)(i) but not from "foot" in section 1114(l) and § 3.350(a)(2)(i), state that "loss of use of . . . foot" is the same as "loss of use" in section 2101(a)(2)(B)(i), and reinsert "both lower extremities." The Secretary's interpretation alters the statute rather than clarifies it.

Recall that in § 3.350(a)(2)(i), the Secretary wrote that loss of use of a foot exists when a veteran's lower extremity disorder is so severe that it is as though his lower leg has been amputated and the only balance and propulsion remaining is that which may be provided by an "amputation stump with prosthesis." Once again, the Secretary gave some shape to that abstract notion by explaining that a loss of use of the kind contemplated by § 3.350(a)(2)(i) exists when a veteran has extremely unfavorable complete ankyloses of the knee, complete ankyloses of two major joints, significant shortening of the extremity, external popliteal nerve complete paralysis with foot drop, characteristic organic changes, or another equivalent disorder. Amputation, ankyloses, and paralysis are exactly the kinds of diagnoses that Congress once required for SAH eligibility but no longer does. If the Court were to define "loss of use" in the SAH context in the manner that the Secretary now suggests, it would in effect reinsert into section 2101(a)(2)(B)(i) a diagnostic requirement that Congress wrote out of that provision.

The counterpoint to that observation, described by Judge Bartley in her concurrence, is that Congress in 1959 meant to remove amputation, ankyloses, progressive muscular dystrophies, and paralysis as *requirements* for SAH but still intended either to retain an implicit cross-reference to § 3.350(a)(2)(i) that existed prior to its 1959 revision or to insert an implicit cross-reference to that provision into section 2101(a)(2)(B)(i) for the purpose of giving non-exclusive *examples* of what it meant by loss of use. In other words, Congress explicitly ceased to demand that amputation, ankyloses, progressive muscular dystrophies, or paralysis exist before a loss of use eligible for SAH has occurred but implicitly wanted to ensure that a loss of use not only precluded locomotion but also was of a kind roughly equivalent to the former requirements.

The Court discerns a few difficulties with that position. First, as the unwieldy language and overabundance of the word "implicit" in the prior paragraph show, Congress, if it did intend what this reading suggests, never made its intentions known. Congress and VA have had nearly 60 years to give some hint of a cross-reference between the two provisions at issue here that would

9

have given claimants and adjudicators a clear idea of their intentions, and they never have. That fact is not necessarily dispositive. *See Walker v. Shinseki*, 708 F.3d 1331, 1338 (Fed. Cir. 2013) (holding that "absence of an explicit cross reference [in the provision at issue] neither undermines the Secretary's case nor makes [the appellant's] case"). It is, however, persuasive.

Second, applying an abridged version of the definition found in § 3.350(a)(2)(i) in place of the phrase "loss of use" causes section 2101(a)(2)(B)(i) to read: a permanent and total service-connected disability due to the loss, or when no effective function remains other than that which would be equally well served by an amputation stump at the site of election below . . . knee with the use of a suitable prosthetic appliance, of both lower extremities, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheel chair." This voluble interpretation creates an internal difficulty that would make section 2101(a)(2)(B)(i) burdensome for adjudicators to apply.

Loss of use under § 3.350(a)(2)(i) contemplates "balance and propulsion" equivalent to that provided by a prosthetic devise. The preclusion element of section 2101(a)(2)(B)(i), which does not include the word "prosthesis," may, in many cases, render the supposed permissiveness of the Secretary's interpretation a nullity. *See Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (holding that the Court must not construe a statute in a manner that renders one or more of its provisions superfluous, void, or insignificant). If a veteran has a disorder that allows him to perambulate unaided to the same degree as he would with a prosthesis, then his locomotion is not precluded. If his locomotion is precluded, then he cannot perambulate unaided to the same degree as he would if he had a prosthesis and his loss of use must be more severe than what is contemplated by § 3.350(a)(2)(i). Or maybe not?[6]

Finally, the Secretary's position here is that § 3.350(a)(2)(i) defines loss of use in section 2101(a)(2)(B)(i) and always has. In that case, that definition of loss of use was implicitly part of section 2101(a)(2)(B)(i) prior to 1959. Consequently, Congress must have believed that SAH was available if it produced a disorder that caused "no effective function other than that which would be equally well served by an amputation stump at the site of election below elbow or knee with use of a suitable prosthetic device," meaning that it produced symptoms like paralysis and

---

[6] It is difficult to discern how the Secretary's interpretation could be fairly implemented in practice. If a veteran has one of the example disorders, then his case would be easy enough to adjudicate. But how will VA handle a case in which a veteran has a disorder that affects his lower extremities and does not neatly fit into examples meant to determine whether a loss of use of *a foot* exists? As anyone who has perused our increased rating for psychiatric disorder cases is aware, adjudicators and medical examiners often struggle to relate the effects of symptoms not found in an example list to effects of symptoms that are in that list.

ankylosis, and it must be caused by amputation, ankyloses, progressive muscular dystrophies, and paralysis. If Congress truly believed that loss of use meant what § 3.350(a)(2)(i) said that it meant and if § 3.350(a)(2)(i) is more permissive than the version of section 2101(a)(2)(B)(i) that existed prior to 1959, then the phrase "loss of use" was a total superfluity before 1959. *See Roper*, 20 Vet.App. at 178. Congress would have just written that SAH is available to veterans with one of the requisite disorders so long as that disorder precludes locomotion, which is essentially what it did in the early days of SAH when it restricted access to SAH to veterans with a spinal cord injury. For this and the other reasons discussed above, the Court concludes that the definition of "loss of use" in § 3.350(a)(2)(i) cannot be the definition of "loss of use" in section 2101(a)(2)(B)(i) and § 3.809(b)(1).

### B. Loss of Use

To determine the contours of section 2101(a)(2)(B)(i), the Court must define the phrases "loss of use" and "such as" as they are used in that provision. Neither yields to straightforward interpretation.

"In absence of an express definition, words are given their ordinary meaning." *Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015). "It is commonplace to consult dictionaries to ascertain" that meaning. *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) (internal quotation marks and citations omitted).

"Loss" is a deprivation, but it "is a generic and relative term" that is not of "limited, hard and fast meaning." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (RHW) 1137 (2d ed. 1987); BLACK'S LAW DICTIONARY (BLACK'S) 1094 (4th ed. 1951). "Use" means "to avail oneself of." RHW at 2097. Combining those definitions indicates a loss of use in the present context is a deprivation of a veteran's ability to avail himself of his lower extremity. That definition does not, however, describe the degree of deprivation needed for a loss of use to exist.

"Loss of use" as a complete legal phrase (along with related phrases such as "loss of member") appeared prior to 1959 mainly in the insurance context. BLACK'S at 1095-96. The few lower courts that did define it did not do so in a manner that removes the ambiguity highlighted by the final sentence in the preceding paragraph, and later editions of BLACK'S do not contain detailed discussion of the phrase. *Id.*

The term "such as" is most commonly used to introduce a set of examples that describe a word or phrase that immediately precedes it. *See* NEW OXFORD AMERICAN DICTIONARY 1738 (3d

11

ed. 2010).  The Court is quite familiar with that use of "such as."  It is the basis for one of the most cited cases on our books.  *See Mauerhan v. Principi*, 16 Vet.App. 436, 442 (2002) (holding that "'such as' means 'for example' or 'like or similar to.'"); *see also Warren v. McDonald*, 28 Vet.App. 194, 197 (2016).

The manner in which Congress used "such as" in section 2101(a)(2)(B)(i), however, is not equivalent to the manner in which the Secretary used it in the provision at issue in *Mauerhan*.  In that case, "such as" introduced a list of potential psychiatric symptoms and indicated that the "symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating."  *Mauerhan*, 16 Vet.App. at 442.  In section 2101(a)(2)(B)(i), "such as" introduces an infinitive phrase rather than a set of examples.  An infinitive can either act like a noun ("I practice because I want *to win*"), or an adjective ("The beach is my favorite place *to go*").  WARRINER'S ENGLISH GRAMMAR AND COMPOSITION FIRST COURSE 57-59 (Liberty ed. 1986).

The word "such" is used most often as either a pronoun or a demonstrative adjective.  GARNER'S MODERN AMERICAN USAGE 783 (3d ed. 2009).  Consequently, no matter the context, it is directional.  *Id*. (Such is "a POINTING WORD and must refer to a clear antecedent").  "Such as" "should" normally "introduc[e]" "a noun."  A DICTIONARY OF MODERN ENGLISH USAGE 603 (2d ed. 1965).  It clearly does in the *Mauerhan* context.  The dictionaries and grammar manuals at the Court's disposal, however, do not contain definitions explicitly explaining the meaning of "such as" when used in the manner that Congress used it in section 2101(a)(2)(B)(i).  Unfortunately, it seems to be one of the "multitude of idiomatic uses" of "such" "that do not call for particular comment in a usage manual."  FOWLER'S MODERN ENGLISH USAGE 749 (Revised 3d ed. 2004).

Although "loss of use" and "such as" are difficult to define individually and each has a generic quality, when observed together within the overall statutory scheme at issue here, they coalesce into a usable standard.  *See Holle v. McDonald*, 28 Vet.App. 112, 116 (2016) ("Statutory

terms are interpreted in their context and with a view to their place in the overall statutory scheme.'") (quoting *Tyler v. Cain*, 533 U.S. 656, 662 (2001)).[7]

The term "loss, or loss of use" appears in four of the five eligibility criteria for SAH. The full text of section 2101(a)(2)(B) reads:

> (B) The criteria described in this subparagraph are as follows:
>
> (i) The disability is due to the loss, or loss of use, of both lower extremities such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair.
>
> (ii) The disability is due to
>
> (I) blindness in both eyes, having only light perception, plus
> (II) the loss or loss of use of one lower extremity.
>
> (iii) The disability is due to the loss or loss of use of one lower extremity together with
>
> (I) residuals of organic disease or injury; or
> (II) the loss or loss of use of one upper extremity, which so affect the functions of balance or propulsion as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair.
>
> (iv) The disability is due to the loss, or loss of use, of both upper extremities such as to preclude use of the arms at or above the elbows.
>
> (v) The disability is due to a severe burn injury (as determined pursuant to regulations prescribed by the Secretary).

The general structure of this provision reveals that when Congress wanted to create conjoined or disjoined elements, it expressed its intention by crafting well-labeled subparts separated by an unmistakable conjunction or disjunction. More importantly, the fact that Congress attached qualifying phrases to "loss, or loss of use" on several occasions indicates that the qualifying phrases are meant to sharpen its contours.

---

[7] The Secretary encourages us to resolve this issue by relying on the legislative history (as opposed to the statutory and regulatory history discussed above) of the provision presently under review. We decline to do so. The available legislative history of Congress's consideration of the bill that eventually produced the current version of section 2101(a)(2)(B)(i) contains a detailed statement from a VA official, but not much evidence indicating how members of Congress thought that provision would operate. S. Rep. No. 747 86th Cong. 1st Sess. (August 18, 1959) (to accompany H.R. 7373); H.R. Rep. No. 724 86th Cong, 1st Sess. (July 28, 1959)( to accompany H.R. 7373). Some jurists believe legislative history to be a chimera and will not consider it. "[F]or those who take it into account, it is meant to clear up ambiguity, not create it." *Milner v. Dep't. of the Navy*, 562 U.S. 562, 574 (2011). When legislative history does not contain "clear evidence of congressional intent" and is "more conflicting than the [statutory] text is ambiguous," it is of little use. *Id*. at 572, 574. The only relatively "clear evidence" in the legislative history before us suggests the unremarkable revelation that Congress intended section 2101(a)(2)(B)(i) only to benefit severely disabled veterans who cannot use their homes without modifications. It is otherwise unhelpful.

One of those provisions is particularly instructive. In section 2101(a)(2)(B)(iv), Congress wrote that a veteran is eligible for SAH if he suffers "the loss, or loss of use, of both upper extremities such as to preclude use of the arms at or above the elbow."

Reading "such as" as "and" would mean that section 2101(a)(2)(B)(iv) requires loss of use of the arms and preclusion of use of the arms that is shown by a loss of use of the arms. That is a nonsensical result. *See Mitchell v. Shinseki*, 25 Vet.App. 32, 43 (2011) ("We have recognized the affirmative duty to avoid a literal interpretation of regulatory language that would produce 'an illogical and absurd result.'") (quoting *Zang v. Brown*, 8 Vet.App. 246, 252-53 (1995)); *Roper*, 20 Vet.App. at 178. The only way to read section 2101(a)(2)(B)(iv) in a manner that produces a logical standard is to define "such as" as a phrase introducing a qualification that describes the nature of the "loss of use" required and its anatomical location.[8]

In the scheme that the Secretary envisions, a veteran who has a reduction in the functionality of his lower extremities so severe that he cannot walk without a cane might be ineligible for SAH because he does not have some sort of additional loss of use. Taken one step farther, the Secretary's argument and the Board's findings in this case suggest that the Board believes that it could conclude that a permanently wheelchair-bound veteran who is entitled to receive disability benefits for a disorder that causes a reduction in functionality in both lower extremities so severe that he cannot walk does not have a loss of use sufficient to warrant SAH. That creates an undefinable and unworkable standard laden with an unacceptably high potential for absurd and unfair results.

We think it better to view "loss of use" in a manner consistent with the definitions discussed above. It is a deprivation of the ability to avail oneself of the anatomical region in question. It is a general term, one that can readily accept additional specificity in various circumstances. Adjacent modifiers and, in the case of SMC, regulatory efforts create that specificity.

---

[8] The Secretary has used "such as" in a similar manner on a number of occasions. He has used it in the rating criteria for mental health disorders ("lesser symptomatology such as to produce severe impairment" (38 C.F.R. 4.132 DC 9206 (1994))); the rating criteria for a hip disorder ("[f]ollowing implantation of a [hip] prosthesis with painful motion or weakness such as to require the use of crutches" (38 C.F.R. 4.71a DC 5054 (2017))); to explain when an increase in disability occurs ("not to be construed as establishing increase of disability in the absence of sudden pathological development or advancement of the basic chronic pathology during active service such as to establish increase of preexisting disability during service" (38 C.F.R. 3.63(i) (2017))); and to describe the disability rating warranted for an unhealed injury ("continued hospitalization or such as to prevent the pursuit of substantially gainful occupation" (38 C.F.R. 4.28 (1998))).

"Such as" is, if nothing else, a directional phrase, and it links "loss of use" to preclusion in section 2101(a)(2)(B). Consequently, in that provision, a loss of use exists if a veteran has suffered a deprivation in his ability to use his lower extremity so severe that he is precluded from perambulating without one of the required assistive devices.

That definition comports with VA's view of preclusion. When VA first issued the present version of § 3.809(b), its deputy administrator wrote that "[t]he requirement that locomotion be 'precluded' may be met where the veteran is able to move about without mechanical aids, either rarely or occasionally, if this activity is not generally feasible or recommended. Precautionary inactivity does not meet this requirement." VA Transmittal Sheet 233. The Secretary focused that observation in a regulation stating that precluded locomotion is "the necessity for regular and constant use of a wheelchair, braces, crutches or canes as a normal mode of locomotion although occasional locomotion by other methods may be possible." 38 C.F.R. § 3.809(c).

These definitions indicate that locomotion is precluded even if a veteran is capable on occasion of moving about unaided. That directly describes the degree of loss of use necessary to warrant entitlement to SAH based on a lower extremity disorder.

Applying this discussion to the facts of this case, the Court concludes that the appellant has been deprived of the use of his lower extremities to such a degree that his locomotion is precluded. Because the Board explicitly or implicitly conceded that he meets all other requirements for SAH, he is entitled to the benefit that he seeks.

## C. Future Cases

The Board had a sound policy reason for interpreting section 2101(a)(2)(B)(i) in the manner that it did. SAH benefits are meant to aid veterans who are so severely disabled that they cannot enjoy the use of their homes unless they are modified to fit their needs. The Board did not wish to suggest an interpretation of section 2101(a)(2)(B)(i) that would throw open SAH to veterans who have reduced motion in their lower extremities but are otherwise able to function in their homes. The limiting factor that the Board discerned is there. It is not, however, in the phrase "loss of use." It is instead in the word "preclude" and other phrases such as "permanent and total" and "due to."

Consequently, the Secretary's complaint that "every time an individual is prescribed an assistive device in conjunction with a lower extremity disability, he or she would then automatically be eligible to receive" SAH is just not true. Secretary's Brief at 6. That individual

must (1) have a *permanent and total* disability (2) *due to* a disorder that (3) involves *both* lower extremities and (4) causes a loss of use so severe that it *precludes* locomotion without the *regular and constant* use of assistive devices. There are plenty of limitations built into that standard.

## IV. CONCLUSION

The appellant's motion to file notice of supplemental authorities out of time is granted. After consideration of the parties' briefs, the record, and the statements made at oral argument, the Board's decision to deny the appellant entitlement to SAH is REVERSED and that matter is REMANDED to the Board for it to provide the appellant with an appropriate benefit. The appellant's appeal of the Board's disposition of his special home adaptation request is DISMISSED.

BARTLEY, *Judge*, concurring in the judgment: Although I agree with the majority's ultimate determination that the Board's denial of entitlement to SAH must be reversed, I reach that conclusion by another route. I am persuaded by the Secretary's argument that the term "loss of use" should be read the same way in SMC and SAH contexts, but disagree with the Secretary that the veteran does not meet that requirement in this case.

As a preliminary matter, I agree with the majority that "loss of use[ ] of both lower extremities such as to preclude locomotion" in section 2101(a)(2)(B)(i) is ambiguous and also agree that the absence of a specific regulatory clarification of that statutory ambiguity means that the Secretary's arguments are entitled to *Skidmore* deference. However, I disagree with the majority's characterization and dismissal of the Secretary's arguments.

The Secretary's position in this case is not, as the majority frames it, "that the phrase 'such as' in section 2101(a)(2)(B)(i) means 'and.'" *Ante* at 4. The Secretary contended that a proper reading of the statutory phrase "indicate[s] that 'loss, or loss of use' is required, and that the product of the loss must lead to the result 'such as to preclude locomotion.'" Secretary's Br. at 5. It seems to me that the fair reading of this argument is that "such as" introduces a description of the possible effects of "loss of use": loss of use *that* precludes locomotion. Indeed, the majority apparently agrees that this is the proper reading. *See ante* at 14 ("The only way to read section 2101(a)(2)(B)(iv) in a manner that produces a logical standard is to define 'such as' as a phrase introducing a qualification that describes the nature of the 'loss of use' required and its anatomical

16

location."). Why, in these circumstances, the majority creates a straw man by insisting that the Secretary equates "such as" with "and" is unclear to me.

Second, the majority speaks of the "loss of use" definition set out in § 3.350(a)(2), the SMC regulation, as if it were a concept completely foreign in the SAH context. *See ante* at 4-5 (stating that the Board's approach, espoused by the Secretary, was "to import a definition for 'loss of use' from elsewhere"). But the phrase "loss[ ] or loss of use" was included in both sections 1114 (SMC) and 2101 (SAH) by the same statute when Congress codified veterans' benefits in title 38 of the United States Code. *See* Pub. L. 85-857, §§ 314 (SMC), 801-805 (SAH), 72 Stat. 1105, 1120-21, 1167-69 (1958). The common statutory origin of section 1114 and section 2101 gives the Secretary a persuasive basis to interpret the phrase "loss of use" in the same way, and I am convinced by his argument, especially in the absence of any reason to presume differing meanings. *See Voracek v. Nicholson*, 421 F.3d 1299, 1304 (Fed. Cir. 2005) ("We note that similar terms used in different parts of the same statute or regulation presumptively have the same meaning."); *Donnellan v. Shinseki*, 24 Vet.App. 167, 173 (2010) ("following the well-established rule of statutory construction that terms in a statute have the same meaning to identical language used in related parts of the same statutory scheme").

Of course, SAH existed prior to the 1958 enactment. Observing that Congress in 1949 permitted entitlement to SAH under a regulation for "any veteran who has 'a permanent and total service-connected disability due to the loss, or loss of use, *by reason of amputation, ankyloses, progressive muscular dystrophies, or paralysis*, of both lower extremities, such as to preclude locomotion without the aid of braces, crutches, canes, or a wheel chair,'" the majority reasons that the removal of the italicized language during a 1959 recodification "make[s] clear that a veteran [was] no longer required to show that he has one of those disorders to obtain SAH." *Ante* at 7-8 (emphasis added). No argument here. The majority goes further, however, and asserts that, because § 3.350(a)(2)(a)-(b) includes ankylosis and paralysis as *examples* of "loss of use" in the SMC context, defining "loss of use" in the SAH context as having the same meaning "would in effect reinsert into section 2101(a)(2)(B)(i) a diagnostic requirement that Congress wrote out of that provision." *Ante* at 9. But the only reliable inference to be drawn from Congress's deletion is the one VA made in 1962 when it conformed SAH regulation § 3.809(b) to the revised SAH statute: "This act eliminated as a requirement for eligibility for [SAH] *the limitations as to etiology* in claims involving loss or loss of use of both lower extremities." VA Transmittal Sheet 233 (Feb.

17

21, 1962) (statement of VA Deputy Administrator W.J. Driver) (emphasis added). I do not believe that the Secretary's inclusion in § 3.350(a)(2) of ankyloses and paralysis as non-exhaustive examples of "loss of use" means that applying the § 3.350(a)(2) definition of "loss of use" in the SAH context would resurrect an SAH etiology requirement that Congress abolished. Consequently, I see no problem in the Secretary's position of the kind envisioned by the majority.[9]

Having disagreed with the majority's resolution of these issues, I am persuaded by the Secretary's argument that the term of "loss of use" should be read as synonymous in section 1114 and section 2101 and that the definition of "loss of use" provided in § 3.350(a)(2) applies in both the SMC and SAH contexts. Consistent with the Secretary's interpretation, I would read section 2101(a)(2)(B)(i) as permitting SAH when a veteran has a permanent and total disability due to the loss of both lower extremities—or the absence of effective function remaining in the lower extremities other than that which would be equally well served by amputation stump with use of a suitable prosthetic appliance—such as to preclude locomotion.

Nevertheless, I conclude that the Board clearly erred in finding entitlement to SAH not demonstrated here. The Board found that, because the veteran was prescribed a cane for gait instability, his locomotion was "precluded" as defined by regulations. R. at 16. Yet, the Board then found that Mr. Jensen did not have "loss of use" of the lower extremities because his bilateral radiculopathy was essentially mild and he did not have paralysis of the popliteal nerve, muscle atrophy, trophic changes, or foot drop. R. at 16-17. The Board's finding that the veteran's locomotion was precluded was a favorable finding that this Court cannot disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). Having met the requirement that his disability preclude locomotion, however, I cannot understand how Mr. Jensen's condition would not also meet the requirement of "loss of use." In other words, while a veteran might meet the "loss of use" requirement without locomotion being precluded, I understand the Secretary's argument and the meaning of the relevant provisions to prohibit the converse. Accordingly, because the Board has

---

[9] The majority contends that my reading presents certain difficulties. The first is that Congress or VA could have been more explicit as to their intentions, but the majority quickly admits that the absence of such explicitness "'neither undermines the Secretary's case nor makes [the appellant's] case.'" *Ante* at 9-10 (quoting *Walker v. Shinseki*, 708 F.3d 1331, 1338 (Fed. Cir. 2013)). The second is that substituting § 3.350(a)(2)'s "loss of use" definition into section 2101(a)(2)(B)(i) "creates an internal difficulty that would make section 2101(a)(2)(B)(i) burdensome for adjudicators to apply." *Id.* The majority doesn't explain what this burden is, and I fail to see it, especially since this is the standard applied by adjudicators determining entitlement to SMC. If the majority means that inserting the definition of "loss of use" into section 2101(a)(2)(B)(i) creates a mouthful, I don't disagree, but verbose interpretations are often unavoidable reality in law.

found that Mr. Jensen's disability met the more restrictive SAH requirement of having precluded locomotion, I agree that the Board's denial of SAH must be reversed and the matter remanded for the provision of the appropriate benefit.